# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 5784 | **DATE** | 7/30/2001 |
| **CASE TITLE** | Galarnyk vs. Hostmark | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order granting defendant Hostmark's motion for summary judgment as to whether plaintiff has established actual or constructive knowledge; it denies it as to whether defendant admitted liability.

(11) ☐ [For further detail see order (on reverse side of/attached to) the original minute order.]

| ✓ | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | JUL 31 2001 | |
| | Notified counsel by telephone. | date docketed | 41 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | FILED | |
| SLB | courtroom deputy's initials | 01 JUL 30 AM 11: 54 | date mailed notice |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TIMOTHY GALARNYK and, TONI GALARNYK, | ) ) ) |
| Plaintiffs, | ) 00 C 5784 ) |
| v. | ) ) ) Judge George W. Lindberg |
| HOSTMARK MANAGEMENT, INC., d/b/a HOLIDAY INN MART PLAZA, | ) ) ) |
| Defendant. | ) |

DOCKETED
JUL 3 1 2001

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Timothy and Toni Galarnyk (Galarnyk), are residents of the state of Wisconsin. Defendant, Hostmark Management, Inc. (Hostmark), is an Illinois corporation with its principal place of business in Illinois. After Galarnyk filed an action for negligence and loss of consortium in the Circuit Court of Cook County, Hostmark removed to the Northern District of Illinois. Hostmark has now filed a motion for summary judgment, claiming that plaintiff cannot establish a claim for negligence because he has failed to establish that defendant had actual or constructive knowledge of the allegedly dangerous condition that caused plaintiff's injury.

**I. Background**

Hostmark operates the Holiday Inn Mart Plaza (hotel) in Chicago, Illinois. On November 18, 1998, Timothy Galarnyk arrived in Chicago to attend a conference. He registered as a guest at the hotel and was assigned to room 2309. Galarnyk had stayed at the hotel approximately four to ten times a year for the previous seven to ten years. Galarnyk attended the conference on the afternoon of the 18th, went out to dinner and returned to his room at the hotel. He woke up the

morning of the 19th at approximately 5:30 or 6:00 a.m. and went into the bathroom. Galarnyk stated that he always looks into a tub before he turns on the water, and did so that morning before he stepped into the shower. He did not notice a bath mat on the floor of the tub or any other unusual condition of the tub or shower. Galarnyk turned on the water, adjusted the water temperature and flipped on the shower to let the water run while he brushed his teeth. He then stepped into the tub with his right foot. As he was lifting his left foot and placing it into the tub, both feet went out from under him and he fell backwards, striking his lower back on the edge of the tub and punching a hole in the wall. Galarnyk stated that he heard a snap in his back and felt pain in his back and left leg. After he got up from his fall, Galarnyk looked into the tub and noticed for the first time a white bath mat on the floor of the tub. He testified that the front 12 to 14 inches of the mat were loose. Galarnyk has no idea how long the mat was in this condition. There are no signs posted in the bathroom warning guests that there is a bath mat in the tub. Galarnyk called the hotel to report the incident.

Jose Bejasa, the night audit manager who was the manager on duty, had worked the 11 p.m. to 8:00 a.m. shift from the evening of November 18th to the morning of the 19th. He stated that the hotel operator and engineering department notified him that he needed to go to room 2309 because of a broken wall. He met Stanley Zurawski, a maintenance engineer, outside room 2309, and they went into the room together after Galarnyk answered the door. The parties dispute the conversations between hotel employees and Galarnyk after the incident. Bejasa stated that when he entered the hotel room, Galarnyk was joking about the broken wall and seemed nervous that the hotel would charge him for its repair. Bejasa said that he asked Galarnyk several times whether he was in pain and whether he needed an ambulance or a doctor,

and that Galarnyk said no and did not appear to be in pain. He states he told Galarnyk not to worry about the wall because the hotel would take care of it. Bejasa testified that after Galarnyk told him the bath mat was loose, he bent down and felt it himself. He stated that the mat did not come up at all and that he felt a small bubble in the mat at the end farthest away from the faucet.

Galarnyk testified that when Bejasa examined the mat, he stated "this is very bad" and that the mat was "their fault" and that Galarnyk did not have to "worry about anything because the hotel would take care of his medical bills and everything." Galarnyk also stated that he did tell Bejasa that he was in pain, although he did not need an ambulance.

Dan Sapp, an employee in the building maintenance department, received instructions to replace the bath mat in room 2309 when he arrived at work at approximately 8:00 a.m. He testified that the mat looked fine and "seemed firm except for a little small inch of the tub." He said the mat was starting to peel about an inch by the wall-side of the tub. He removed the mat and installed a new one.

Belia Valenciano was the room attendant at the hotel who had cleaned room 2309 the day Galarnyk checked into the hotel. She has been employed for almost 16 years as a room attendant in the housekeeping department of the hotel. Hostmark requires the room attendants to inspect the bath mats to ensure that they are routinely checked. Valenciano stated that when cleaning a hotel room, she starts with the bathroom. She sprays a disinfecting soap on the tub, cleans the shower wall and tub with a brush, and rinses the area with water. Valenciano stated that she does not use hot water when cleaning the tub. She pulls on the bath mat every day to ensure that it is not loose or getting hard or discolored. If something is wrong with a mat, Valenciano calls the housekeeping department to replace the mat. Housekeeping prepares a repair slip and gives it

to the maintenance department. Valenciano has seen mats with about one inch of curling at the corner or edge but has never seen one that is "unstuck a lot." Valenciano stated that when a mat is loose, she can feel it because her fingernail is able to go under the mat.

Room attendants clean at least 18 rooms in an 8½ hour work day, which includes a half hour for lunch and another half hour for a break. They may clean additional rooms for additional pay. Attendants recheck the rooms they have cleaned at the end of the day and prepare a slip indicating that each room is unoccupied and ready for a guest. On November 18, 1998, Valenciano cleaned her regularly assigned rooms, 2301 to 2320, and also rooms 1864-1867 during her regular work hours.

Every room at the hotel is required to have a bath mat, which Hostmark installs to make the tub floor less slippery.[1] It does not know what type of mat was installed in room 2309 on November 19, 1998, how old the mat was or who manufactured it. Hostmark threw out the bath mat from room 2309 when it was replaced after the incident. The mat was approximately 1'4" x 2'10", and covered almost the entire floor of the tub. It was approximately the thickness of a few pieces of paper and had a rough, scratchy surface. The mat was attached to the tub with a self-adhesive on the bottom of the mat. Because it was the same color as the tub, the mat was difficult to see.

Hostmark does not provide a mat's installation directions to employees who install the mats or provide formal training on how to do so. It stated in its answers to plaintiffs' interrogatories that it "replaces bath mats on occasion when necessary." When installing mats,

---

[1] Hostmark denies that it installed the mat at issue because some mats were installed before Hostmark took over management of the hotel in 1996 or 1997. It does not know with any certainty, however, whether it did or did not install the mat at issue from room 2309.

-4-

the employee removes the existing mat, uses denatured alcohol or lacquer thinner to remove any glue from the prior mat, dries the surface of the tub, and places a new mat on the floor of the tub. The glue on the underside of the mat is activated by pressing the mat to the tub and using a roller to remove any air pockets or bubbles on the new mat. Once this process is completed, the mat may be used immediately. A mat may become unglued from hot water eroding the glue. The surface underneath a loose mat is slimy, and Hostmark is aware that an unglued mat is a safety hazard to guests. Dan Sapp stated that during his inspections of the rooms, he encounters approximately three loose mats a month. In November 1998, however, Hostmark replaced 22 mats. Thirteen of these had a repair request from housekeeping. Six of these requests had no date of repair. Hostmark claims that not all requests from housekeeping are written, and not all maintenance repairs are recorded. Sapp also stated that he does not always replace a mat when housekeeping requests it if the request is made because the mat is dirty or mildewed. Because he has a limited number of mats, he only replaces the mats that are "peeling," "bulging out" or "damaged."

The maintenance department replaced a bath mat in room 2320 on November 19, 1998. Although Valenciano had cleaned the room, she did not complete an order slip for this repair. On the housekeeping report Valenciano filled out on November 18, 1998, she marked room 2309 "VC" for "vacant and clean." On the November 19, 1998, housekeeping report, Valenciano marked room 2309 "out of order." A housekeeping slip from that day indicates that Valenciano reported that a tile in the tub was broken.

Galarnyk spoke about the incident to David Prentiss, the resident manager, who was responsible for investigating and handling guest complaints.[2] Galarnyk told Prentiss about his fall and that he was in pain. In addition, Galarnyk stated that Prentiss told him that if he sought medical care, the hotel would take care of everything. Prentiss denies this, stating that he simply told Galarnyk that if he was in pain, he should see a doctor.

Laura Narro was the administrative assistant to Gary Wood, the general manager of the hotel. She prepared the loss incident report documenting Galarnyk's accident for the insurance company. Galarnyk stated that Narro told him that the hotel would pay all his medical bills and costs. Narro denies this, stating that she simply forwards bills to the insurance company and makes no decisions about whether to pay customers' medical bills. She does not recall meeting Galarnyk at the hotel on the day of the incident.

On his way out of the hotel, Galarnyk told Bejasa he would see his own doctor in Eau Claire, Wisconsin. Before he arrived home, Galarnyk had to stop driving because his back hurt. He called Prentiss at this time, and told him he was in severe pain and unable to drive. He went to the emergency room in Eau Claire, Wisconsin, for treatment.

Hostmark prepared a loss incident report and sent the claim to its insurance carrier, Fireman's Insurance Fund Co., on November 23, 1998. Galarnyk subsequently spoke with several claims adjusters, including Karen Bordner and Scott May. Galarnyk asserts that May was authorized to investigate, evaluate and settle claims for defendant. Hostmark denies this,

---

[2] Galarnyk could not remember whether he had spoken to Prentiss at the hotel before he left the hotel, or whether he got Prentiss' name before he left the hotel and spoke to him by phone later. Prentiss testified that he remembered talking to Galarnyk but said he thought the conversation took place over the phone and he did not remember ever meeting Galarnyk.

claiming that the policy language Galarnyk relies on as support is not a Fireman's Fund liability policy. May testified that because this was a special claims case, he had to seek authority from the client for settlement reserves. On February 23, 1999, May took a recorded statement from Galarnyk. During the statement, Galarnyk alleges that May accepted liability for the claim when he answered "ok" to Galarnyk's statement that:

> You sent [wage loss forms and medical authorization forms] when you and I talked on January 27th, we confirmed that Fireman's Fund is accepting the responsibility or liability for this and then you sent me a packet that I received on January 30th, I think.

May testified that he answered "ok" to Galarnyk's statement (which he did throughout the conversation) to keep the recorded statement moving and not to agree with Galarnyk's assertion that Fireman's Fund has accepted liability. He stated that initial conversations with a claimant are fact-finding missions, during which he does not rebut what the claimant tells him. May further stated that he did not at any time accept liability for Galarnyk's claim. Galarnyk alleges that May sent medical record release forms and wage loss verifications to him to complete. Galarnyk also sent Fireman's Fund his medical bills and wage loss information, along with several letters in which he stated that the adjusters and Hostmark had accepted liability for his claim. Fireman's Fund did not respond to, deny or refute Galarnyk's assertions in these letters that it had accepted liability for his claim.

## II.  Discussion

To establish a claim for negligence under Illinois law, plaintiff must establish: 1) the existence of a duty owed by defendant to plaintiff; 2) that defendant breached that duty; 3) proximate cause; and 4) injury. *Mt. Zion State Bank & Trust v. Consolidated Communications, Inc.*, 169 Ill.2d 110, 116, 660 N.E.2d 863, 867 (1995). To demonstrate that Hostmark–as a

private property owner–breached its duty to keep its premises in a reasonably safe condition, plaintiff has the burden of establishing that defendant had actual or constructive knowledge of the dangerous condition that caused plaintiff's injury. *Gengler v. Herrington*, 219 Ill.App.3d 6, 11 (2nd Dist. 1991); *Burke v. Grillo*, 227 Ill.App.3d 9, 18 (2nd Dist. 1992).

Defendant's motion for summary judgment focuses on this final element. While Hostmark disputes plaintiff's claims generally, it asserts that Galarnyk has failed to establish a question of fact that Hostmark had actual or constructive notice of a defect in the bath mat that he alleges caused his fall. A plaintiff establishes constructive notice by showing that a "condition has existed for such a length of time, or was so conspicuous, that authorities exercising reasonable care and diligence might have known about it." *Stewart v. United States of America*, 918 F.Supp. 224, 227 (N.D.Ill. 1996) (applying Illinois law); *see also Burke*, supra, at 18. Because defendant asserts that plaintiff has presented no evidence that defendant had notice of any problem with the bath mat, defendant claims that it is entitled to summary judgment. In addition, defendant claims that plaintiff has presented no evidence to establish what condition the mat was in before the accident. Without notice, according to defendant, plaintiff cannot establish a breach of its duty to exercise ordinary care to keep its premises reasonably safe.

Plaintiff responds, in part, that when defendant is the one that places the object or creates the condition on its property that causes the injury, plaintiff does not have to prove notice, citing *Donoho v. O'Connell's Inc.*, 13 Ill.2d 113, 148 N.E.2d 434 (1958); *Piper v. Moran's Enterprises*, 459 N.E.2d 1382, 121 Ill.App.3d 644 (5th Dist. 1984). In *Donoho*, the court stated the applicable law as follows:

> that liability will be imposed where a business invitee is injured by slipping on a
> foreign substance on the premises if it was placed there by the negligence of the
> proprietor or his servants.

*Id.* at 118, 437. "(W)here the foreign substance is on the premises due to the negligence of the proprietor or his servants, it is not necessary to establish their knowledge, actual or constructive; whereas, if the substance is on the premises through acts of third persons, the time element to establish knowledge or notice to the proprietor is a material factor." *Id.* (internal citations omitted). Galarnyk contends that the exception of the notice requirement applies to the case at bar because Hostmark placed the bath mat on its premises.

The situations contemplated in *Donoho* and its progeny, however, as indicated by the language "on the premises due to the negligence of the proprietor," that involve foreign substances that were dangerous *at the time* they were placed on the premises. *Id.; see also Johnson v. United States*, 1999 WL 446694, *3 (N.D.Ill.) (plaintiff needed to show that actually placing mat on floor was negligent). As Hostmark points out, the placement of an already dangerous object on a property obviates the need for notice because the danger to others exists immediately and should be apparent immediately. Plaintiff compares the bath mat in this case to the grocery store mat in *Wind v. Hy-Vee Food Stores, Inc.*, where the court found that the plaintiff did not have to establish notice. 272 Ill.App. 3d 149, 650 N.E.2d 258 (3rd Dist. 1995). In *Wind*, however, the evidence supported an inference that the mat over which the plaintiff tripped was already curled and dangerous when the store employees placed it on the floor and that the employees did nothing to secure it. *Id.* at 156, 650 N.E.2d at 263; *see also Reed v. Wal-Mart Stores, Inc.*, 298 Ill.App.3d 712, 700 N.E.2d 212 (4th Dist. 1998) (employee placed in pathway a board with a rusty nail protruding from it). Plaintiff has not established here that the

bath mat itself, when placed in the tub, was a dangerous object or created a hazard that should have been immediately apparent to Hostmark. Although plaintiff states that Hostmark did not provide to its employees the written instructions for installing the mat, he offers no evidence of what those written instructions entailed or how they differed from the installation procedures Hostmark actually used. Nor has he explained why the installation process that one of the hotel's maintenance employee described is itself negligent. Although he claims that some mats require a 12-hour curing time before use, there is simply no evidence that any of the different brands or styles of mats that Hostmark used did. An assertion that the mat at issue required such a process is entirely speculative.

Plaintiff is required, then, to establish that Hostmark had actual or constructive notice of any dangerous condition the bath mat caused. He alleges that there is sufficient evidence to demonstrate that Hostmark breached its duty of care by failing to exercise ordinary care in maintaining the bath mats. Plaintiff claims that the hotel failed to implement a system under which the mats were removed before they actually became loose. He cites no case that supports the proposition that a proprietor has to remove an object from its premises *before* it becomes a hazard. Plaintiff has to prove that defendant had actual or constructive notice of an allegedly unsafe condition; requiring action before such a condition exists would render the notice requirement void.

The court also is not convinced by plaintiff's argument that there is evidence that the room attendant did not exercise reasonable care in inspecting the mat. Plaintiff stated that after he fell, the bath mat was 12-14 inches loose at the front and that this condition had to have occurred gradually. Although defendant disputes that the mat was loose when Bejasa and Sapp

examined it, it points out that even if the court accepts plaintiff's statement as true, there is still no evidence that the mat was in this condition before his fall rather than having come loose from the force of his fall. Valenciano testified that she had cleaned room 2309 the day before Galarnyk fell, and that she always cleaned the tub and pulled on the mat to see if it was secure. Galarnyk himself testified that he did not notice anything about the mat–or even the mat itself–when he looked in the tub before his shower. Although Galarnyk attempts to create an issue of fact concerning the quality of Valenciano's cleaning, there is simply no evidence to support the suggestion that she did not clean the room and check the tub as she testified. *See Stewart*, 918 F.Supp. at 227 (custodian checked the mats the morning of plaintiff's fall). Hostmark has not received any guest complaints regarding loose mats, and no guest had previously slipped or fallen on a bath mat. *Id.*; *see also Davis v. United States*, 2000 WL 28272 (N.D.Ill.). Galarnyk himself had stayed at the hotel fairly frequently in the past but never noticed a problem with the bath mats. *Id.*

Plaintiff also claims that Hostmark could have had actual notice of the need to change the bath mat because maintenance changed a mat in room 2320 on November 19, 1998, although Valenciano did not write out a repair slip for the room. Plaintiff claims that because Valenciano testified that she asks maintenance directly to replace bath mats, she could have requested a change for room 2309 but maintenance could have changed the wrong room's mat. The court finds that this interpretation of the evidence is entirely speculative. There is simply nothing to tie the mat change in room 2320 to the mat in room 2309 that is at issue in this case. The court finds that plaintiff has not established that the hotel had actual or constructive notice of a problem with the bath mat.

-11-

Plaintiff has another basis for opposing Hostmark's motion for summary judgment, however, which is that several of the hotel's employees, as well as Scott May, the claims adjuster who handled his insurance claim, admitted liability for his injuries. Galarnyk claims that Bejasa's statement during his examination of the tub that it was the hotel's fault, Prentiss' and Narro's statements that the hotel would take care of his medical costs, and May's admission of and acceptance of liability are admissible under the party admission exception to the hearsay rule.

For a statement to qualify as a party admission, the party offering the statement must establish that 1) the declarant was an agent or employee; 2) the statement was made about a matter over which he had actual or apparent authority; and 3) the declarant spoke by virtue of his authority as an agent or employee. *Bafia v. City of International Trucks, Inc.*, 258 Ill.App.3d 4, 9, 196 Ill.Dec. 121, 629 N.E.2d 666 (1994). "Obviously, agents or employees are seldom given specific authority to make statements which are damaging to their principal, but such statements will be admitted if they concern matters within the scope of the agent or employee's employment." *Id.* at 10, 629 N.E.2d at 671 (citing *Miller v. J.M. Jones Co.*, 225 Ill.App.3d 799, 803, 587 N.E.2d 654, 658 (1992)).

Plaintiff claims that Bejasa, Prentiss and Narro all made statements concerning matters within the scope of their employment. Although defendant denies that plaintiff has established any actual or apparent authority to admit liability on the part of these employees, Bejasa and Prentiss were managers on duty at the time of the accident or shortly thereafter, and a statement concerning an admission of liability or whether a condition at the hotel that caused injury was the hotel's fault could reasonably fall within the scope of their employment. The court does not see, however, how Narro, an administrative assistant, would have assessments of the hotel's liability

within the scope of her employment. In addition, although plaintiff states that Prentiss and Narro admitted liability, a closer look at plaintiff's statement of additional facts reveals that plaintiff alleges Prentiss and Narro told him the hotel would pay for his medical bills. Paying for or offering to pay for medical or hospital bills "shall not be construed as an admission of any liability by such person or persons." 735 ILCS 5/8-1901. Prentiss' and Narro's statements concerning the hotel's willingness to pay Galarnyk's medical bills, even if accurate, are therefore not admissible as admissions of liability. A question of fact remains, however, as to Bejasa's alleged statements about the "bad" condition of the bath mat and the hotel's "fault" about the incident, which he denies making. The court also finds that May had at least apparent authority to admit liability for and settle insurance claims that he was handling. Whether he explicitly admitted liability to Galarnyk, and whether his silence upon receipt of Galarnyk's letters constitutes an admission of liability are questions of fact.

### III. Conclusion

As the case now stands, the court has found that plaintiff has failed to establish that defendant had actual or constructive notice of the allegedly dangerous condition of the bath mat. It has also concluded, however, that plaintiff has established a question of fact regarding whether one or more persons with actual or apparent authority to do so admitted liability for the incident. The court therefore grants the defendant's motion for summary judgment as to whether plaintiff has established a question of fact regarding defendant's actual or constructive notice of an allegedly dangerous condition on its premises. It denies the motion for summary judgment to the extent that plaintiff has established a question of fact regarding whether defendant's employees or agents admitted liability.

**ORDERED:** The court grants defendant Hostmark's motion for summary judgment as to whether plaintiff has established actual or constructive knowledge; it denies it as to whether defendant admitted liability.

**ENTER:**

George W. Lindberg
United States District Judge

DATED: July 30, 2001